Hey, I'm pleased to report Mark Fields, the attorneys for the plaintiffs, and I apologize to Mr. Fields. Yeah, it's kind of devastating. Counsel, before you get very far, let me just ask you, have you read our Lowell v. Recon Trust Company case? I did. It is now October 19th. No, I have not. Is that a key in this case? Mr. Fields with the MDCPA. We're going to be somewhat handicapped because this is, except for one paragraph or one subpart, pretty much controls them. We'll talk about their concepts, and then I'll go ahead with the presentation. David, the court could perhaps explain the suitability of the point on T6 in this case. Were you familiar with the Fourth Circuit case, Wilson? No, Your Honor. Wasn't it? Your Honor, this is the case. Wasn't it referred to in the briefs? I don't recall that specific case. The cases that I would ask the court to focus on are Hulse v. Oley, the Rockweeds Trust case, which is cited in the brief, that say steps taken prior to a judicial or a non-judicial foreclosure can be violations of the MDCPA. And we're not seeking to challenge actions that were taken in connection with an actual foreclosure proceeding. It's all the things they did beforehand. Just looking at the whole case makes it clear that unless the party is collecting money, it's not collecting a debt under the MDCPA. So in that case, the court was dealing with the California anti-deficiency laws. And my understanding is that Nevada has, in Section 40.455, Sub 3, has a similar provision that indicates that since this was a purchase-funded loan, there would be no possibility that any money could be collected. Your only remedy is to foreclose on the property. Is that correct? That is correct. In fact, Your Honor, it was a bankruptcy, and it discharged. So they couldn't see, for instance, on the note. Okay, so that's the case. And Paul was probably right on point because basically it says they're not collecting a debt. So if they're not collecting a debt, is there any other provision of the MDCPA that it might be violating? Yes, Your Honor. And I cited cases that talk about even after bankruptcy, that if the threaten of foreclosure and certain things that would otherwise violate the MDCPA, that if they say, if you don't pay this money, you will lose your home by any stretch of the imagination, that is seeking to collect a debt, because they're saying, if you don't pay, you spend. That's not what O says. That's your problem. O says that's not a collection of a debt because unless you can collect money, you're not collecting a debt. That's what O says. I suppose, counsel, your main argument is that the conduct that Nation Star has represented as engaging with your client all occurred outside of the foreclosure proceedings. Is that your argument? That is correct, Your Honor. And that conduct was egregious. The concepts are that there was a nonjudicial foreclosure proceeding. Excuse me. They were denied the right to foreclose at a foreclosure mediation conference because they didn't have a decision on the matter. That was in February of 2014. I assume we're talking about Nation Star, not Wells Fargo. Well, we have a quite confusing error because at the foreclosure mediation conference, Nation Star showed up. Wells Fargo showed up. I don't gauge it. I think it's 26 or 28 of my opening briefs. It's just a complete mess. It was the holder of the notes. Who engaged in these pressure tactics that you're referring to? The pressure tactics were engaged in by Nation Star. Let me just summarize that quickly because if I was going to go through everything they did that was abusive, I wouldn't be here for 15 minutes. I'd be here about 15 hours. After the February 2014 foreclosure mediation conference, they were not given permission to foreclose on March. So your position there is that ended the foreclosure aspect. Absolutely. From then on, it was a decollection. Is that what you're saying? Yes, absolutely. Look at what they did. That was in February of 2014. They are not permitted to foreclose at the foreclosure mediation conference. And they write a letter a month later basically saying if you don't pay, we're going to foreclose. And that was a direct communication from Nation Star to the clients who were represented by counsel. I appreciate your enthusiasm, but let me just read to you from how I'm sorry, you don't know about this case because it's controlled. It says, Actions taken to facilitate a non-judicial foreclosure, such as sending a notice of default on a notice of sale, are non-attempts, deflected death, as the term is defined by the FDCPA. So in this case, admittedly, the mediation failed. They would have had to initiate a new collection, a new notice of default in the election to sell in order to foreclose. They couldn't get any money, therefore it wasn't being did. So what do you rely upon in the FDCPA to say that this is a violation? It's kind of a hybrid because the other one interpreted it somewhat equivalent to if no foreclosure had ever been started in the first place, and they sent a letter before they filed a notice of default in the election to sell. And if you say that, then you're saying that no lender could communicate with a borrower to try to get them to pay before they initiate any foreclosure? No, that's not what I'm saying. Okay, what are you saying? Well, first of all, that goes through the various violations. While counsel's arguing, I'll look at Nicole's case to get the distinction. Because I think one of the cases I cite, there was a violation of the FDCPA, and they asked for a bandage to this letter because they couldn't collect enough. So on March 25th, after they had foreclosed, they make a demand on a client to pay. Then on April 2nd, I write a letter saying, don't contact my clients. Because under the FDCPA, you can't contact a client represented by counsel. Well, they don't care. After I kill them in writing, don't contact my clients, in May to June, there are three separate counsel folks to my clients. Three of them in two months. After I've written them telling them not to do it, then. And your belief is that violates the FDCPA? Yes, yes. What do you cite in the FDCPA that would say that what you have just described is a violation? 1692 A.C. says, after a debt collector is told that they can't contact a client, but they can contact the lawyer directly, they are obligated under 1692 C.A. not to contact the client. And they should start after a following debt collector? Yes, they were. Well, again, I will address that on my rebuttal. Well, that's important, the fact that there are debt collectors. So, after they have three calls to my client, after they know the client is represented, I write them again, don't do it. Then in May to June, they post notices on the door. They literally go to the house, three separate cases, and post notices on the door. I write them again, don't do it. But does the law prohibit their posting a notice on the door? It's a direct communication. I understand that, but I'm just saying, is that how foreclosures are commenced? No, no, no, no. You guys went to foreclosure. Notice, the foreclosure report started with a recording of the county reporter's office. These notices say, important, so they should pull us in. Oh, I see, okay. Then in June 18, they send a modification or a loan statement to my clients. Again, directly communicating to my clients. I'm writing again, don't do it, don't do it. I keep on saying in my letters, keep on threatening foreclosed, but you're not allowed to foreclose unless you have the original loan document, because that is what you were excluded from foreclosing if you didn't have the original note. I'm writing again and again. If you have the original note, otherwise, all your aggressive foreclosures are a violation of pursuing your debt collector, which I'll have to lift on the protocol part. 1692A says, can't communicate with someone who's represented by counsel. They violated that. 92D says, can't harass or oppress. 92E, you can't make any false statements. 92F, you can't threaten to take actions that you have no intent to pursue. And again, in each of these communications, they say they will foreclose if you don't pay, but they don't have the ability to foreclose. That is a violation of all four of those factors. They're harassing my clients again and again and again after they were told that my clients were represented by counsel. I document this in the record. There are eight separate communications from February of 2014 through July, excuse me, September of 2014, eight times they contact my clients, three times verbally, three times by posting notices in the door, several times by writing a to-do draft, and the worst of the situations was on August 26th. They see me, they write to my client. And they see me directly to my client, letter after letter after letter, saying don't contact my client. I think we're familiar with all of the activities they engage in. We still need to hear from you as to whether they're a debt collector. You're down to three and a half minutes. You may reserve. I'm reserving five minutes. Sorry, you're down to three and a half. I'll reserve for that. Very well. You may just go here from the main board. Good morning, Your Honors. The counsel, would you identify yourself for the record, please? Yes. Ariel Stern, the appraiser for Nation Star Mortgage and for Wells Fargo. Are you aware correctly, I'm sorry, I was going to say, do I have it correctly that Wells Fargo was not part of these activities in terms of the calls, the allegedly duressing calls and that sort of thing? That is correct, Your Honor. The servicer here is Nation Star, and so as servicer they would take all of those activities in connection with the foreclosure. And Wells Fargo is the record beneficiary of it. You've trust, essentially, the investor on the loan. So all of the actual activity would have been Nation Star. And I think as framed in the argument for the element, the one key question, if not the key question, is whether these were debt collecting activities. I think the district court got it right and correctly anticipated the law in this region. Have you read the law? Actually, I'm remiss that we did not do a supplemental authority. Well, we wish you had because you probably would have been able to notify opposing counsel and it's a relevant case. Yes, Your Honor. And I apologize for that. I reviewed it recently. And I believe it is, as Judge Smith said, dispositive of most, if not all, of the issues in the case. I think as you framed the argument with the opposing counsel, the only question here is whether these were debt collecting activities. And the district court had a very voluminous record. The complaint here was very detailed. It included a lot of exhibits which are now in the record before you. So the district court had an ample ground in which to review these communications and determine that they were all related to foreclosure, not the attempt to collect money. Well, now, is that a question of fact or a question of law? I think, Your Honor, it is a question of law on which a 12b-6 determination was proper because all of those exhibits were part of the complaint. The court did not have to go outside of that plea. So what if we read the pleading to conclude that these activities, or at least some of these activities, occurred outside of the foreclosure process and therefore would be amenable to the Debt Collection Act? What then? I think, Your Honor, the statement or any such statement in the complaint would be a legal judgment on the part of the plaintiff in drafting the plea, and that would not be entitled to the presumptions of truth in all of the efforts that come from that. And in addition to that, I believe that the district court, especially the debt was under totally admissible, determined that these were not plausible claims, or that there was not a plausible claim for a FDCPA violation because the complaint as described, or I should say the communications as described, in the complaint which did include all of the complaint of communications related to the foreclosure activity. Counsel, if I could interject a question. Why couldn't it be plausibly considered that the complaint is complaining that Nation Star was using the threat of foreclosure in order to collect the debt? I think that's putting aside whether the whole case is dispositive, which will therefore, but apart from that, I think that is a case that wouldn't be plausible, definitely for two reasons. First, and I think the appeal explained this, at that point there had been a bankruptcy discharge. So there was at that point no debt to collect of the letters that are complained of and that were included as part of the record. Before the district court expressly said that if there was a bankruptcy discharge, that the letters were not an attempt to collect the debt, but merely provided for informational purposes. That was within the record of the pleading. Secondly, there was no discharge. Your Honor, I think there was a. . . In other words, the debt was never discharged, was it? I believe, Your Honor, that it was discharged on the 17th of January of 2014. And that's in the record before you. Unfortunately, the actual order of discharge is not before you, but the document of the bankruptcy court is. But at some point it was before the discharge, which is really not in this case. At some point there was a debt. There was a note only. Was that correct? Correct. The mediation that occurred on this case occurred on the. . . I forget the exact date. February of 2014. And that is, it was after that mediation that the appellant's claim that they should turn it over had the right to foreclose, and that's really the predicate for a lot of the claims that derive from it, that that ended the foreclosure proceedings. Technically, that's the. . . That's the. . . In this case, his claim is that the foreclosure was over at that point, yet the nation star continued to allegedly harass his client and spread debt. Yes, that's, I think. I think he put it a little differently. I think he said that at that point it was determined that nation star did not have the right to foreclose, which is not accurate because the mediation simply determined, the mediator simply determined that there was a non-compliance with the document of production requirements, which is not the same as saying that there's no right to foreclose or that there's any kind of preclusive finding that opiates are missing, that nation star doesn't have the original documents, the original documents aren't even necessary, even under the Violent Mediation Statute. So I think the right to foreclose was not determined one way or the other in the mediation, other than for purposes of that mediation itself. There was nothing precluding the nation star from recording a new notice of law from starting over. But it never did start over, did it? It did not start over, but I think, and I think this answers, this is the second part of my answer to Judge Gould's question as well, the communication that came after that, after that mediation, was related primarily, and we would argue exclusively in the district court file, I think, to foreclosure. The explanation that the consequence of not paying the debt will result in a foreclosure, it's merely a provision of information. It's not an attempt to get money. Now, obviously, the, it's ironical, but it boils down to is if you don't pay now, you'll foreclose. So that's essentially what this is all about. That's essentially what it says here. I do agree with that, but I don't think, and this goes again to what Judge Gould was asking, I don't think that leads to a plausible foreclosure attempt. Coming back to the chronology of this, the leadership discharge occurred in January, so it occurred even before that February mediation. So at that mediation, there was no, the debt had been discharged. Really, we were there. They were there 10-4. In addition to that, the letter does not have any of the typical indicia. It says of an attempt to collect the debt, it wasn't its primary purpose. It basically says we're going to foreclose. This is how much is owed on this lien. This is where you need to pay it, and these are some of the options that you have to avoid foreclosure, and it sets forth some loss mitigation and home retention information. That is all there in connection with the foreclosure. If it's not for the foreclosure, if it's not for the end result at the end of this process, which is a non-judicial sale, that letter wouldn't have come out. Let me ask you to just cancel it and foreclosure for a minute. There is another provision in the FDCPA that may cover this even if no bar is the other portion of it, and that is 15 U.S.C. section 1692F6A. That provides that the FDCPA applies in part to an entity whose principal business purpose is, in quotes, the enforcement of security interests. That would clearly cover NationServe, wouldn't it? I think so. You know what NationServe does? Foreclose. NationServe is a service provider, so one of the things it does is foreclose, but it's not the key principal. That would be a question of fact. If it is, and that's one of its purposes, and arguably the FDCPA would to some degree apply in that situation. I don't know whether all of these are alleged would apply, but perhaps that's something that we could, if you're familiar with this subsection, you know what I'm talking about. Yes, Your Honor, and I think I have two responses to that. First of all, I do believe that in the complaint, including all of the exhibits, it's apparent that NationStar is a servicer, and that servicer performs services on behalf of, that go beyond simply collecting the debt. It forecloses. The deed of trust is in the record, and under the deed of trust, there's many things that the lender, as it's defined in the deed of trust, does, including preservation of the property, assuring the deterrence on the property, all sorts of things that all go back to the servicer. So it's not the principal. Okay, well let's just say, for our purposes, that it's in the business of enforcement of security interests. Would the allegations of plaintiffs here about contacting clients without going through the lawyer and so on be a violation of the FDCPA? I don't think so, Your Honor, because even then, if you assume that NationStar falls under the definition of a debt collector, the practice, the activity that is alleged still has to be debt collecting activity. Well, I'm sure that's right. I guess that's the question, and what does the statute mean in connection with the activities of people who do businesses in enforcement of security interests? Clearly, with respect to debt collectors, you're right. But the question is, how much does the act apply to people who have this other more limited function? I understand that, Judge, and I think the response is twofold. First, in the manner that the complaint was filed, as I understand it at least, and I don't think there's been anything said today that would contradict this, this is alleged as a debt collection violation, not as a violation of, let me rephrase it, I don't think there's been an allege that NationStar was a debt collector or was engaging in regulated activity because of its enforcement of security interests. I understand what you're saying is because the complaint alleged a debt collection violation, and since Shelby barred that, we'd have to say the fact that Mr. Kirkcliffe didn't have the complaint to allege this other, or are you saying they're just done because they didn't allege that? I'm saying the second part, Your Honor, they're done because there was a waiver that they could have alleged that, and I don't think there's anything that precluded that, and that's simply not the way the complaint was addressed. It wasn't how it was framed, and the point to Mr. Master, that's not, let's spell that in the briefing, but that would be a waiver issue. So, in other words, the statute always contained this. They didn't allege it. They're a problem. That would be our position, Your Honor. We think that's a preferable outcome, and amending to send, excuse me, remaining for the district court to consider a claim that was not waived. So, I think. What about remaining? What about remaining on the point of interest, Judge Smith, there, for the district court to consider whether amendment is proper? I think, Judge, the district court, even though it's ordered to not address amendment, implicitly found the amendment was not proper, and I think it found that correctly because its motion, excuse me, in that proposition to our motion, it was missed. It was at the glosary paragraph at the very end that suggested amendment, but the grounds that it were given for amendment was additional facts consistent with what the plaintiffs have colorfully described as the lobbying and correctional campaign. In other words, there wouldn't be any type of factual allegation made that would bring the alleged activity outside of debt collection, excuse me, outside of foreclosure and into debt collection. So. If the complaint that was tossed out, is that the first complaint? Yes, Your Honor. So, we have shown that there was a request to amend, and we believe the district court correctly denied that because it, it went a bit through with the amendment. And the reason for that is because the plaintiff didn't say what they would say other than more of the same types of facts that led the complaint to be disclosed in the first place. Anything else? Your time has expired. As you know, you actually preserved time. Thank you. Your time has expired. Your time has expired. In my reply brief at pages 6 through 8, I have a very long quote from the paper that I use. And on page 8, for instance, I'll just read it to you quickly. It says, the Third Circuit approves of the new law definition in some cases. The CAC, the legislative plaintiff, Abraham, fell behind on a mortgage, filed a bankruptcy petition, entered into a loan modification, and there were various things that were going on. So, even if there's a bankruptcy, or the debt's been discharged, if you basically are saying, if you don't pay it, it will then enforce a security interest. Did you read the quote? I did. Did that quote appear? I don't. Okay. The quote is in our case. Abraham's the Third Circuit. Wonderful circuit. Is that on control? We have a controlling piece. So, unfortunately, I'll move over to dealing with, do you have any comment on the question I raised with opposing counsel about whether a cause of action under 1692F6A remains, even if O knocks out your debt collection claim, based on the idea that Nation Star is involved in the enforcement of security interest? Do you have any comment on that? I would agree with your honor. And not just that, I of course must turn to the ex-officer for emotional distress, whether or not they are subject to the FDCPA. Counsel, with all respect, I know you feel strongly about this, but you're suggesting that the things that you've indicated were extreme and outrageous under Oliver v. Lowe, and you had a lot of distraction. I don't think so. I think you have a polite institution that, over six months, lied repeatedly. They said August 26th, they had possession of the note, we can take your call away. They couldn't. These people moved out of the state because they were subject to a six-month campaign where they were repeatedly contacted. You have a lawyer protected. Do that. We'll just ignore the statute and we'll contact you directly. We will lie about our ability to foreclose. They know they could foreclose. They didn't have that note. They needed the note foreclosed. And they lied. They said they had. And I've asked them again and again and again to confirm that statement, and they just stole it. And this is not a case where someone was killed by their financial police. They were driven from their home. They were driven from the state. And Wells Fargo is liable for the actions of its servicer. I cite the case of Countrywide for a courier in my briefs that a servicer, that the sins of the servicer are visited upon in the principal. So we have a case where I call it a lie harassment campaign. That's not hyperbole. That's an understatement. They spent six months while ignoring the fact that they had counsel and threatening to do things which they knew they couldn't do. Thank you, Counsel. Your time has expired. The case just argued will be submitted for decision.
judges: O'scannlain, Gould, M. Smith